UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------ x
ADMIRAL INSURANCE COMPANY,                    :
                                              :   Docket No.: __21-5159_____
               Plaintiff,            :
                                              :
               -against-            :
                                              :
ADOPTION ASSOCIATES, LLC,                     :
BARBARA CASEY, and KENNETH STACKER,           :
Individually and as the Natural Guardian of   :
K.S., a minor, as an interested party,        :
                                              :
               Defendants.           :
------------------------------------------------------------------ x

# COMPLAINT

Plaintiff ADMIRAL INSURANCE COMPANY ("Admiral") by and through its attorneys, WADE CLARK MULCAHY LLP, alleges the following as its Complaint for Declaratory Judgment.

## CASE IN BRIEF

1. This is a declaratory judgment action arising out of Adoption Associates, LLC's ("Associates") and Barbara Casey's ("Casey") alleged concerted and successful scheme to deprive underlying plaintiff Kenneth Stacker ("Stacker") of experiences with his daughter, K.S., so the defendants could profit from the adoption of his daughter in connection with the lawsuit captioned: *Kenneth Stacker v. Adoption Associates, LLC d/b/a A Baby Step Adoption, et al.*, Pennsylvania Court of Common Pleas, Philadelphia County, Docket No.: 201001973 ("Underlying Lawsuit"). The basis of Admiral's complaint is that the Admiral policy does not provide coverage for the

Underlying Lawsuit because the insureds' logically and/or causally connected conduct occurred prior to the Admiral policy's July 1, 2019 Retroactive Date.

## THE PARTIES

2.  Plaintiff, Admiral is a Delaware corporation with a principal place of business in Scottsdale, Arizona that is authorized to issue insurance policies in Pennsylvania.

3.  Defendant, Associates has a principal place of business located at 340 Morgantown Road, Suite 2, Reading, PA 19611.

4.  Defendant, Casey, the director of Associates, has a principal place of business located at 340 Morgantown Road, Suite 2, Reading, PA 19611.

5.  Defendant, Stacker, Individually and as the Natural Guardian of K.S., a minor, is an interested party in this declaratory judgment action as the plaintiff in the Underlying Lawsuit. Upon information and belief, at all times relevant, Stacker resided at 45 Ramsey Avenue, Keansburg, NJ 07734.

## JURISDICTION AND VENUE

6.  Personal jurisdiction over Associates is proper, as Associates is a citizen of the Commonwealth of Pennsylvania and conducts business and obtained the insurance policy at issue in Pennsylvania.

7.  Personal jurisdiction over Casey is proper, as Casey is a citizen of the Commonwealth of Pennsylvania and conducts business and obtained the insurance policy at issue in Pennsylvania.

8. Personal jurisdiction over Stacker is proper as Stacker commenced the Underlying Lawsuit in the Commonwealth of Pennsylvania, County of Philadelphia.

9. Venue is proper under 28 U.S.C. § 1391 because the insurance policy at issue in this action was issued to a Pennsylvania organization.

10. Subject matter jurisdiction is based upon 28 U.S.C. § 1332 and 28 U.S.C. § 2201 because the action involves citizens of different states and the amount in controversy exceeds the sum of $75,000.

11. An actual controversy exists between the parties regarding their respective rights and obligations under the relevant policy of insurance.

## FACTUAL BACKGROUND

### *The Policy*

12. Admiral issued policy # EO000049538-02 to Associates and Adoption Steps, LLC with effective dates of July 1, 2020 to July 1, 2021 ("Policy"). *See* Policy, attached as **Exhibit 1**.

13. The Policy's Retroactive Date is listed as July 1, 2019. *See* **Exhibit 1**.

### *The Insurance Application*

14. The Policy's Insurance Application, attached hereto as **Exhibit 2**, which was signed by Casey on April 27, 2020, includes Section III – Claims History.

15. The Insurance Application asks:

*25. a) Has any claim ever been made against you or any of your employees?* *See* **Exhibit 2**.

16. "No" was checked in response to this question. *See* **Exhibit 2**.

17. The Insurance Application also asks:

*25. b) Do you have any knowledge or information about any circumstance or incident which might reasonably be expected to give rise to a claim against you?* See **Exhibit 2**.

18. "No" was also check in response to this question. See **Exhibit 2**.

### *The Underlying Lawsuit*

19. On or about October 27, 2020, Stacker commenced the Underlying Lawsuit.

20. On or about March 12, 2021, Stacker filed a Second Amended Complaint against Associates d/b/a A Baby Step Adoption, Casey, Adam B. Sklar ("Sklar"), Kenneth C. Myers ("Myers"), Craig B. Bluestein ("Bluestein"), and Susan N. DeNaro ("DeNaro"), which is the operative complaint in the Underlying Lawsuit. See Underlying Lawsuit, attached as **Exhibit 3**.

21. In the Second Amended Complaint, it is alleged that this case is about the defendants' concerted and successful scheme to deprive Stacker of experiences with his daughter, K.S., so the defendants could profit from the adoption of his daughter. See **Exhibit 3**.

22. It was alleged that Associates and Casey, owner of Associates, utilized attorneys, such as defendants Sklar, Myers, Bluestein, and Denaro, to complete adoptions, including the unlawful attempted adoption at issue. See **Exhibit 3**, pars. 26 & 30.

23. It was alleged that through the malicious efforts of Associates, Casey, and Sklar, K.S.'s mother was secreted out of New Jersey and brought to Philadelphia where K.S. was born at Jefferson Hospital in Philadelphia on October 27, 2018, all behind Stacker's back and with complete disregard for Stacker's parental rights. See **Exhibit 3**, par. 34.

24. It is alleged that despite Stacker's insistence that he wanted to raise K.S., in or around August 2018, Associates and Casey arranged for the adoption of K.S. without Stacker's knowledge or consent, and against Stacker's express wishes. *See* **Exhibit 3**, par. 47.

25. In October 2018, Sklar contacted Stacker in an attempt to force Stacker to change his decision and consent to the adoption. *See* **Exhibit 3**, par. 53.

26. Because Associates, Casey, and Sklar were deliberately and flagrantly trying to take K.S. from Stacker, on October 24, 2018, Plaintiff filed a child custody complaint against mother in Monmouth County, New Jersey. *See* **Exhibit 3**, par. 62.

27. At the October 25, 2018 hearing, Stacker once again asserted his rights to the custody of K.S. *See* **Exhibit 3**, par. 65.

28. It is alleged, Associates, Casey, and Sklar deliberately and maliciously concealed the location of mother and the hospital where K.S. was to be born as part of their scheme to deny Stacker his parental rights and secure the adoption of K.S. against Stacker's will. *See* **Exhibit 3**, par. 69.

29. As a direct result of the defendants' malicious conduct, Stacker was completely unaware of the birth of his daughter. *See* **Exhibit 3**, par. 70.

30. By late October 2018, Associates, Casey, and Sklar had retained Bluestein as the "Adoptive Parent Attorney" and "Attorney for birthfather termination" and intended to pay Bluestein for his services in the scheme to steal K.S. from Stacker. *See* **Exhibit 3**, par. 71.

31. On October 30, 2018, Associates, Casey, Sklar, and Bluestein caused the adoptive parents to file a Report of Intent to Adopt in the Berks County Court of Common Pleas. *See* **Exhibit 3**, par. 75.

32. It is alleged that the defendants continued their missions to steal K.S. from Stacker. Ultimately, the Berks County Court entered a Special Order, on November 7, 2018, due to the alleged active concealment and misrepresentations of the defendants. *See* **Exhibit 3**, par. 82.

33. Due to the defendants' alleged misconduct, Stacker was required to oppose the adoption case. *See* **Exhibit 3**, par. 86.

34. On October 16, 2019, the Court vacated its November 2018 Special Order and ordered that Associates immediately relinquish custody of Stacker's daughter. *See* **Exhibit 3**, pars. 90–91.

35. On October 28, 2019, Stacker was reunited with his daughter. *See* **Exhibit 3**, par. 93.

36. By December 3, 2018, Associates and Casey all knew that Stacker was represented by attorneys in Pennsylvania, was the father of K.S., objected to the adoption, refused to execute a consent for the adoption, and had filed the New Jersey Custody Action. *See* **Exhibit 3**, par. 101.

37. Although defendants knew how to contact Stacker and his counsel, they did not serve Stacker or his counsel with the Petition to Terminate Father's Rights; rather, defendants did not serve Stacker with the Petition until more than two months later, on February 19, 2019. *See* **Exhibit 3**, par. 115.

38.     As a direct and proximate result of defendants' misconduct, Stacker was forced to incur legal fees and allegedly suffered severe physical and emotional damages / punitive damages. *See* **Exhibit 3**, pars. 95-96; 153-156.

39.     Count I sounds in negligence and is asserted against all defendants. *See* **Exhibit 3**, pars. 157-168.

40.     Count II sounds in Fraud / Fraudulent Concealment against Associates, Casey, Sklar, and Bluestein. *See* **Exhibit 3**, pars. 169-175.

41.     Count III sounds in Negligent Misrepresentation (Concealment) against Associates, Casey, Sklar, and Bluestein. *See* **Exhibit 3**, pars. 176-183.

42.     Count IV sounds in Intentional Infliction of Emotional Distress against all defendants. *See* **Exhibit 3**, pars. 184-186.

43.     Count V sounds in Wrongful Use of Civil Proceedings (Dragonetti Act) against all defendants. *See* **Exhibit 3**, pars. 190-197.

44.     Count VI sounds in Negligent Infliction of Emotional Distress against all defendants. *See* **Exhibit 3**, pars. 198-203.

45.     Count VII sounds in Civil Conspiracy against all defendants. *See* **Exhibit 3**, pars. 204-208.

***Admiral's Response***

46.     Admiral is currently defending Associates and Casey in the Underlying Lawsuit pursuant to a strict reservation of rights. *See* Admiral Letter, dated February 25, 2021, attached as **Exhibit 4**; and Admiral Letter, dated July 26, 2021, attached as **Exhibit 5**.

**COUNT I – The Policy Does Not Provide Coverage Because The Retroactive Date Bars Coverage**

47. Admiral repeats and reiterates every allegation hereto made in this complaint in the paragraphs designated "1" through "46" inclusive, with the same force and effect as if set forth more particularly at length.

48. The Policy's effective dates are July 1, 2020 to July 1, 2021.

49. The Policy's Retroactive Date is July 1, 2019.

50. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, Insuring Agreements (EO 09 55 11 16) state, in part:

> *I. Insuring Agreements*
>
> *A. We will pay on behalf of the insured those amounts which the insured is legally obligated to pay as damages caused by a professional incident taking place within the policy territory and subsequent to the retroactive date and prior to the expiration or termination date of this policy, for which a claim is first made against the insured during the policy period and reported to us in writing during the policy period or any applicable extended reporting period, as described in Section VI Extended Reporting Period; provided that prior to the inception date of this policy, no insured knew, nor could have reasonably foreseen, that the professional incident might result in a claim.*

51. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, Section II Definitions (EO 09 55 11 16) defines "professional incident" as:

> *M. Professional Incident means a negligent act, error or omission in the rendering of or failure to render professional services by the insured or a person acting under the insured's direction, control or supervision and for whose acts, errors or omissions the insured is legally liable. All professional incidents that are logically or causally connected will be deemed one professional incident that, for the purpose of determining coverage under this policy, occurred at the time of the earliest act, error or omission.*

52. Under this wording, and as a matter of law, subject to the Policy's other terms, conditions, endorsements, and exclusions, the Policy only provides coverage for those amounts the insured is legally obligated to pay as damages caused by a professional incident taking place

within the policy territory and subsequent to the retroactive date and prior to the expiration of the Policy period.

53. Based on the allegations in the Underlying Lawsuit, the defendants' allegedly wrongful conduct, which was logically and/or causally connected, as it was part of a scheme to deprive Stacker of experiences with his daughter, so the defendants could profit from the adoption of Stacker's daughter, took place prior to the Policy's July 1, 2019 Retroactive Date.

54. The Policy does not provide coverage for damages caused by a professional incident taking place prior to the Policy's Retroactive Date.

55. Therefore, on this basis, the Policy does not provide coverage for the Underlying Lawsuit.

**WHEREFORE**, Admiral respectfully demands judgment against Associates and Casey for:

    a. A declaration that Admiral does not owe Associates and/or Casey a defense in respect of the Lawsuit;

    b. A declaration that Admiral does not owe Associates and/or Casey indemnity in respect of the Lawsuit;

    c. Interests, costs and disbursements of this action; and/or

    d. Such other, further and different relief as this Court deems just and proper.

**COUNT II – The Policy Does Not Provide Coverage Based On The Insureds' Prior Knowledge**

56. Admiral repeats and reiterates every allegation hereto made in this complaint in the paragraphs designated "1" through "55" inclusive, with the same force and effect as if set forth more particularly at length.

57. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, Insuring Agreements (EO 09 55 11 16) state, in part:

> *I. Insuring Agreements*
>
> *A. We will pay on behalf of the insured those amounts which the insured is legally obligated to pay as damages caused by a professional incident taking place within the policy territory and subsequent to the retroactive date and prior to the expiration or termination date of this policy, for which a claim is first made against the insured during the policy period and reported to us in writing during the policy period or any applicable extended reporting period, as described in Section VI Extended Reporting Period; provided that prior to the inception date of this policy, no insured knew, nor could have reasonably foreseen, that the professional incident might result in a claim.*
>
> *B. We have the right and duty to defend any claim brought against the insured seeking damages caused by a professional incident to which this insurance applies, including the right to appoint counsel to defend the insured, and will do so even if any of the allegations of the claim are groundless, false or fraudulent. We may make such investigation and settlement of any claim as we deem expedient. Our right and duty to defend ends when we have used up the applicable Limits of Liability in the payment of damages and/or claims expenses or have tendered the applicable Limits of Liability to a court of competent jurisdiction. We have no obligation or duty to defend any claim for which coverage is excluded hereunder or not otherwise afforded by this policy and we are not obligated to pay any claim expenses incurred by the insured in the defense of any claim not covered by this policy.*

58. Under this wording, and as a matter of law, subject to the Policy's other terms, conditions, endorsements, and exclusions, the Policy only provides coverage for damages provided that prior to the inception of the Policy, no insured knew or could have reasonably foreseen, that the professional incident might result in a claim.

59. The Policy has an effective date of July 1, 2020.

60. The Underlying Lawsuit alleges, *inter alia*, due to the defendants' alleged misconduct, Stacker was required to oppose the adoption case. *See* **Exhibit 3**, par. 86.

61. The Underlying Lawsuit alleges, on October 16, 2019, the Court vacated its November 2018 Special Order and ordered that Associates immediately relinquish custody of Stacker's daughter. *See* **Exhibit 3**, pars. 90–91.

62. The Underlying Lawsuit alleges, on October 28, 2019, Stacker was reunited with his daughter. *See* **Exhibit 3**, par. 93.

63. The Underlying Lawsuit alleges, by December 3, 2018, Associates and Casey knew that Stacker was represented by attorneys in Pennsylvania, was the father of K.S., objected to the adoption, refused to execute a consent for the adoption, and had filed the New Jersey Custody Action. *See* **Exhibit 3**, par. 101.

64. Based on the allegations in the Underlying Lawsuit, prior to July 1, 2020, Associates and Casey knew or could have reasonably foreseen that K.S.'s adoption might result in a claim.

65. However, prior to the Policy's inception, neither Associates nor Casey provided notice to Admiral regarding any potential claim connected to K.S.'s adoption.

66. Additionally, the Policy's VIII., Conditions (EO 09 55 11 16) section states, in part:

*H. Application*

> *The statements made in the Application are all insured's representations and are deemed material. This policy is issued based upon the truth and accuracy of such representations.*

67. The Policy's Insurance Application, attached hereto as **Exhibit 2**, which was signed by Casey on April 27, 2020, includes Section III – Claims History.

68. The Insurance Application asks:

*25. a) Has any claim ever been made against you or any of your employees?* See **Exhibit 2**.

69. "No" was checked in response to this question. *See* **Exhibit 2**.

70. The Insurance Application also asks:

*25. b) Do you have any knowledge or information about any circumstance or incident which might reasonably be expected to give rise to a claim against you?* See **Exhibit 2**.

71. "No" was also check in response to this question. *See* **Exhibit 2**.

72. When Associates and Casey applied for the Policy, Associates and Casey represented that no claim had never been made against them, and they did not have knowledge or information about any circumstance and/or incident that might reasonably be expected to give rise to a claim against Associates or Casey.

73. However, based on the allegations in the Underlying Lawsuit, at the time Associates and Casey applied for the Policy, Associates and Casey had knowledge that Stacker was contesting the adoption of K.S.

74. Accordingly, based upon information and belief, Associates and Casey did not truthfully and accurately represent information with respect to Claims History in the Insurance Application.

75. Had Associates and Casey truthfully represented their Claims History, then Admiral would not have issued they Policy or would have issued it on materially different terms.

**WHEREFORE**, Admiral respectfully demands judgment against Associates and Casey for:

a.  A declaration that Admiral does not owe Associates and/or Casey a defense in respect of the Lawsuit;

b.  A declaration that Admiral does not owe Associates and/or Casey indemnity in respect of the Lawsuit;

c.  Interests, costs and disbursements of this action; and/or

d.  Such other, further and different relief as this Court deems just and proper.

**COUNT III – The Policy Does Not Provide Coverage Because There Is No Professional Incident Or Professional Services**

76. Admiral repeats and reiterates every allegation hereto made in this complaint in the paragraphs designated "1" through "75" inclusive, with the same force and effect as if set forth more particularly at length.

77. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, Insuring Agreements (EO 09 55 11 16) state, in part:

*I. Insuring Agreements*

*A. We will pay on behalf of the insured those amounts which the insured is legally obligated to pay as damages caused by a professional incident taking place within the policy territory and subsequent to the retroactive date and prior to the expiration or termination date of this policy, for which a claim is first made against the insured during the policy period and reported to us in writing during the policy period or any applicable extended reporting period, as described in Section VI Extended Reporting Period; provided that prior to the inception date of this policy, no insured knew, nor could have reasonably foreseen, that the professional incident might result in a claim.*

*B. We have the right and duty to defend any claim brought against the insured seeking damages caused by a professional incident to which this insurance applies, including the right to appoint counsel to defend the insured, and will do so even if any of the allegations of the claim are groundless, false or fraudulent. We may make such investigation and settlement of any claim as we deem expedient. Our right and duty to defend ends when we have used up the applicable Limits of Liability in the payment of damages and/or claims expenses or have tendered the*

*applicable Limits of Liability to a court of competent jurisdiction. We have no obligation or duty to defend any claim for which coverage is excluded hereunder or not otherwise afforded by this policy and we are not obligated to pay any claim expenses incurred by the insured in the defense of any claim not covered by this policy.*

78. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, Section II Definitions (EO 09 55 11 16) defines "claim" as:

*C. Claim means:*

*1. a written demand received for money or services by any insured resulting from a professional incident.*

*2. service of suit against an insured.*

79. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, Section II Definitions (EO 09 55 11 16) defines "professional incident" as:

*M. Professional Incident means a negligent act, error or omission in the rendering of or failure to render professional services by the insured or a person acting under the insured's direction, control or supervision and for whose acts, errors or omissions the insured is legally liable. All professional incidents that are logically or causally connected will be deemed one professional incident that, for the purpose of determining coverage under this policy, occurred at the time of the earliest act, error or omission.*

80. The Policy's Amendatory Endorsement Definition of Professional Services (EO 14 38 03 20) defines "professional services", *inter alia*, as:

*N. Professional Services means services performed in person, by telephone or by other form of electronic communication, by an Insured for others involving specialized training, knowledge and skill while in the pursuit of the profession or services as stated in the Named Insured's Business on the Declarations, including Good Samaritan Acts.*

81. The Policy's Declarations page lists the Named Insured's Business as "Domestic Adoption Agency".

82. Under this wording, and as a matter of law, subject to the Policy's other terms, conditions, endorsements, and exclusions, Admiral would only be required to pay those amounts

which the insured is legally obligated to pay as damages caused by a professional incident and only has a duty to defend any claim brought against the insured seeking damages caused by a professional incident to which this insurance applies.

83. Based on the allegations in the Lawsuit, Stacker asserts claims for, *inter alia*, fraud, negligent misrepresentation, intentional infliction of emotional distress, wrongful use of civil proceedings, and civil conspiracy claims against Associates and Casey.

84. These types of claims do not constitute a professional incident and/or professional services, as those terms are defined by the Policy.

85. Accordingly, based upon information and belief, some or all of the claims set forth in the Underlying Lawsuit do not constitute a professional incident and/or professional services.

86. Therefore, on this basis, the Policy does not provide coverage for the Underlying Lawsuit.

**WHEREFORE**, Admiral respectfully demands judgment against Associates and Casey for:

a. A declaration that Admiral does not owe Associates and/or Casey a defense in respect of the Lawsuit;

b. A declaration that Admiral does not owe Associates and/or Casey indemnity in respect of the Lawsuit;

c. Interests, costs and disbursements of this action; and/or

d. Such other, further and different relief as this Court deems just and proper.

**COUNT IV – The Policy's Exclusion C Bars Coverage**

87. Admiral repeats and reiterates every allegation hereto made in this complaint in the paragraphs designated "1" through "86" inclusive, with the same force and effect as if set forth more particularly at length.

88. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, V. Exclusions (EO 09 55 11 16) section states the Policy does not apply to:

*C. Any act, error or omission which is knowingly wrongful, dishonest, fraudulent, criminal or malicious;*

89. Under this wording, and as a matter of law, subject to the Policy's other terms, conditions, endorsements, and exclusions, the Policy does not provide coverage for any act, error, or omission that is knowingly wrongful, dishonest, fraudulent, criminal, or malicious.

90. Based on the allegations in the Underlying Lawsuit, Stacker alleges that Associates and Casey undertook a "scheme motivated by pure greed and carried out while knowing full well that Plaintiff did not consent, and indeed, specifically objected to, the adoption [of K.S.]".

91. Additionally, the Underlying Lawsuit specifically asserts claims sounding in "fraud / fraudulent concealment", and "intentional infliction of emotional distress", as well as other causes of action that require intent and/or knowledge, including Stacker's negligent misrepresentation claim, wrongful use of civil proceedings claim, and civil conspiracy claim.

92. Furthermore, the Underlying Lawsuit contains allegations that the defendants' actions, including Associates and Casey, were intentional, malicious, fraudulent, willful, wanton, and reckless.

93. Consequently, Stacker's claimed damages arise out of Associates' and Casey's acts, errors, and/or omissions, which were knowingly wrongful, dishonest, fraudulent, criminal and/or malicious.

94. The Policy's Exclusion C bars coverage for such claims and damages.

95. Therefore, on this basis, the Policy does not provide coverage for the Underlying Lawsuit.

**WHEREFORE**, Admiral respectfully demands judgment against Associates and Casey for:

a. A declaration that Admiral does not owe Associates and/or Casey a defense in respect of the Lawsuit;

b. A declaration that Admiral does not owe Associates and/or Casey indemnity in respect of the Lawsuit;

c. Interests, costs and disbursements of this action; and/or

d. Such other, further and different relief as this Court deems just and proper.

**COUNT V – The Policy Does Not Provide Coverage For Punitive Damages**

96. Admiral repeats and reiterates every allegation hereto made in this complaint in the paragraphs designated "1" through "95" inclusive, with the same force and effect as if set forth more particularly at length.

97. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, Insuring Agreements (EO 09 55 11 16) state, in part:

*I. Insuring Agreements*

*A. We will pay on behalf of the insured those amounts which the insured is legally obligated to pay as damages caused by a professional incident taking place within the policy territory and subsequent to the retroactive date and prior to the expiration or termination date of this policy, for which a claim is first made against the insured during the policy period and reported to us in writing during the policy period or any applicable extended reporting period, as described in Section VI Extended Reporting Period; provided that prior to the inception date of this policy, no insured knew, nor could have reasonably foreseen, that the professional incident might result in a claim.*

*B. We have the right and duty to defend any claim brought against the insured seeking damages caused by a professional incident to which this insurance applies, including the right to appoint counsel to defend the insured, and will do so even if any of the allegations of the claim are groundless, false or fraudulent. We may make such investigation and settlement of any claim as we deem expedient. Our right and duty to defend ends when we have used up the applicable Limits of Liability in the payment of damages and/or claims expenses or have tendered the applicable Limits of Liability to a court of competent jurisdiction. We have no obligation or duty to defend any claim for which coverage is excluded hereunder or not otherwise afforded by this policy and we are not obligated to pay any claim expenses incurred by the insured in the defense of any claim not covered by this policy.*

98. The Policy's Miscellaneous Medical Professional Liability Insurance, Claims-Made Form, II. Definitions (EO 09 55 11 16) section defines "damages", in part:

*E. Damages mean a monetary and compensatory judgment, award or settlement. However, damages do not include:*

*1. punitive or exemplary damages or any damages which are a multiple of compensatory damages;*

99. Based on the allegations in the Lawsuit, Stacker is seeking various damages, including punitive damages.

100. Based on the plain language of the Policy, the Policy does not provide coverage for punitive damages.

101. Further, as a matter of Pennsylvania law and public policy, punitive damages are not covered by insurance policies, such as the Policy.

102. Consequently, to the extent Stacker is seeking punitive damages in the Underlying Lawsuit, the Policy does not provide coverage for said damages.

**WHEREFORE**, Admiral respectfully demands judgment against Associates and Casey for:

a. A declaration that Admiral does not owe Associates and/or Casey a defense in respect of the Lawsuit;

b. A declaration that Admiral does not owe Associates and/or Casey indemnity in respect of the Lawsuit;

c. Interests, costs and disbursements of this action; and/or

d. Such other, further and different relief as this Court deems just and proper.

Dated: Philadelphia, PA
November 23, 2021

WADE CLARK MULCAHY LLP

*/s/ Lauren Berenbaum*

Lauren J. Berenbaum, Esq.

*/s/ Michael Bono*

Michael Bono, Esq.
*Attorneys for Admiral*
1515 Market Street, Suite 2050
Philadelphia, PA 19102
267.239.5526
267.565.1236 (fax)